Matthew Knepper, *admitted pro hac vice*
Sarah Zimmerman, *admitted pro hac vice*
Brendan Melander, SBN 034777
HUSCH BLACKWELL LLP
8001 Forsyth Blvd., Suite 1500
St. Louis, Missouri 63105
Telephone: (314) 480-1500
Facsimile: (314) 480-1505
Matt.Knepper@huschblackwell.com

*Attorneys for Defendant Phoenix Education Partners, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Asher Bronstin, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Phoenix Education Partners Inc. d/b/a University of Phoenix,<br><br>Defendant. | Case No. 2:26-cv-03400-DJH<br><br>**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**(Oral Argument Requested)**<br><br>(Assigned to the Honorable Diane J. Humetewa) |

Defendant Phoenix Education Partners, Inc.[1] ("UOPX" or "Defendant"), by and through its undersigned counsel, hereby moves, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss Plaintiff Asher Bronstin's ("Plaintiff") Complaint [Dkt. 1] ("Complaint" or "Compl.") in its entirety, because as pled in the Complaint (1) the communications at issue were not "telemarketing" as defined by the TCPA; (2) 47 C.F.R. § 64.1601(e) does not apply to texts sent via carrier prescribed short code; (3) Plaintiff lacks Article III standing;

[1] University of Phoenix is not a d/b/a for Phoenix Education Partners, Inc. Additionally, Phoenix Education Partners, Inc. ("PEP") is not a proper defendant in this case and by filing this motion PEP does not concede or waive any defenses including, but not limited to, the fact that it is not the proper party.

and (4) the voice calls at issue were placed within a legally permissible safe harbor window after Plaintiff texted "Stop." This Motion is supported by the following Memorandum of Points and Authorities, the public record, and documents referenced by the Complaint.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION.

Generally speaking, UOPX agrees with Plaintiff that Congress enacted the TCPA to protect consumers against "invasions of privacy" caused by unsolicited telemarketing calls. But this case does not involve invasive telemarketing calls or texts. It involves two text messages and two voice calls that Plaintiff received from UOPX after he—by his own admission—first initiated contact by requesting information from UOPX. Compl. ¶ 24. Plaintiff, who is a serial filer of TCPA lawsuits,[2] now attempts to transform this brief, self-initiated exchange of communications with UOPX, into a nationwide Telephone Consumer Protection Act (the "TCPA") class action, asserting three causes of action on behalf of three broadly defined classes. However, ***all*** of Plaintiff's claims fail as a matter of law for the following reasons.

---

[2] Mr. Bronstin has filed 19 other TCPA cases since the beginning of 2024. *See, e.g.*, *Bronstin v. Purekana LLC*, 2:24-cv-00792 (D. Ariz. dismissed May 9, 2024); *Bronstin v. Sutton Funding LLC*, 2:24-cv-04116 (E.D.N.Y. dismissed Nov. 14, 2024); *Bronstin v. LifeMD, Inc.*, 1:24-cv-06277 (S.D.N.Y. dismissed Nov. 18, 2024); *Bronstin v. EF Educ. First, Inc.*, 1:25-cv-12685 (D. Mass. dismissed Oct. 11, 2025); *Bronstin v. AMRK Enters. Inc.*, 1:25-cv-09320 (S.D.N.Y. dismissed Jan. 6, 2026); *Bronstin v. Dash Cap. Inc.*, 5:26-cv-10001 (E.D. Mich. filed Jan. 1, 2026); *Bronstin v. Palmetto Solar, LLC*, 3:25-cv-00426 (W.D.N.C. dismissed Mar. 16, 2026); *Bronstin v. Synergy Bus. Sols. DE, LLC*, 3:25-cv-03267 (S.D. Cal. dismissed Mar. 18, 2026); *Bronstin v. Lending Force LLC*, 2:25-cv-13564 (E.D. Mich. dismissed Apr. 24, 2026); *Bronstin v. Camelback Admin. Grp. Inc.*, 2:26-cv-01767 (D. Ariz. dismissed Apr. 30, 2026); *Bronstin v. Upstart Network, Inc.*, 1:25-cv-01410 (M.D. Pa. filed July 29, 2025); *Bronstin v. S. Cal. Edison Co.*, 8:25-cv-02334 (C.D. Cal. dismissed June 18, 2026); *Bronstin v. ViaSat, Inc.*, 1:25-cv-00927 (M.D. Pa. filed May 26, 2025); *Bronstin v. Ixonia Bank*, 2:26-cv-00970 (E.D. Wis. filed May 30, 2026); *Bronstin v. EZ Advance LLC*, 1:26-cv-04393 (S.D.N.Y. filed May 22, 2026); *Bronstin v. Jane Techs., Inc.*, 1:25-cv-01083 (M.D. Pa. filed June 13, 2025); *Bronstin v. Fast Bus. Fin. LLC*, 2:26-cv-05835 (C.D. Cal. July 7, 2026); *Bronstin v. Heinsohn Ins Agency LLC*, 8:26-cv-01483 (C.D. Cal. filed June 1, 2026 *Bronstin v. Servbank SB*, 1:25-cv-06182 (N.D. Ill. filed June 3, 2025). Mr. Perrong has represented Mr. Bronstin in ten of those cases.

***First,*** the communications at issue were not "telemarketing" under the TCPA and this is a required element for each of Plaintiff's claims. The communications were made to complete an ongoing business transaction that Plaintiff himself initiated, which is not telemarketing as a matter of law. ***Second,*** Plaintiff's claims related to the text messages also fail because 47 C.F.R. § 64.1601(e) does not apply to texts sent via short code, and Plaintiff's novel attempt to expand this provision to the carrier prescribed short code process is misguided. ***Third,*** Plaintiff fails to allege a concrete, particularized injury sufficient to establish Article III standing to bring his claims related to the text messages. Plaintiff requested the very contact he now characterizes as invasive; Plaintiff had no problem identifying UOPX as the texter and Plaintiff was able to easily opt out from receiving any additional text messages. ***Finally,*** Plaintiff's claims related to the voice calls also fail because UOPX placed these calls within a legally permissible safe harbor window as this Court and 47 C.F.R. § 64.1200(a)(10) both recognize after Plaintiff texted "Stop."

For all these reasons, as set forth more fully below, the Court should dismiss the Complaint in its entirety, or alternatively, strike Plaintiff's class allegations.

## II. SUMMARY OF THE ALLEGATIONS OF PLAINTIFF'S COMPLAINT.

Importantly, Plaintiff admits that in February 2024, he "requested information from [UOPX]."[3] Compl. ¶ 24. Following Plaintiff's self-initiated request for information, UOPX contacted Plaintiff via text message and voice call on four occasions. *Id*. ¶¶ 24, 27, 40. On

---

[3] Although the Court must take the allegations as true, UOPX notes that to say only that Plaintiff "requested information" from UOPX severely understates Plaintiff's actions. If this action proceeded to discovery, UOPX has evidence that will definitively show that Plaintiff not only requested information on UOPX's website, but also submitted an application to UOPX's Bachelor of Science in Business program and signed an Online Modality Enrollment Agreement on February 9, 2024. The Court may also properly consider such information for the purpose of this Motion. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06, *superseded by statute on other grounds*, Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified as amended at 28 U.S.C. § 1453), *as recognized in Abrego Abrgo v. Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006) (holding that a court may consider, on a motion to dismiss, extrinsic "documents crucial to the plaintiff's claims, but not explicitly incorporated in his complaint").

February 11, 2024, UOPX texted Plaintiff to encourage Plaintiff to "finalize [his] application and schedule [his] first class." *Id*. ¶ 27. On February 12, 2024, UOPX texted Plaintiff regarding "getting registered for class." *Id*. ¶ 27. On the same day, Plaintiff replied "Stop," and UOPX promptly sent a confirmation that Plaintiff had been unsubscribed and would receive no further text messages. *Id*. ¶¶ 25–27. Plaintiff does not allege that texting stop unenrolled him from the school.

Plaintiff alleges that on February 17 and February 19, 2024, UOPX placed two voice calls to Plaintiff, leaving a voicemail each time, to encourage Plaintiff to complete his enrollment. Compl. ¶¶ 36–37, 40.

Based on these four communications, Plaintiff asserts three causes of action on behalf of three proposed nationwide classes. First, Plaintiff alleges that UOPX violated the TCPA by placing the two voice calls when Plaintiff's number was registered on the National Do Not Call Registry. Compl. at "First Cause of Action." Second, Plaintiff alleges that UOPX violated the TCPA and 47 C.F.R. § 64.1601(e) by texting Plaintiff using a short code. Compl. at "Second Cause of Action." Finally, Plaintiff alleges that UOPX violated the TCPA because UOPX continued to call Plaintiff after Plaintiff texted "Stop." Compl. at "Third Cause of Action."

## III. LEGAL STANDARDS.

### A. Motion to Dismiss under Fed. R. Civ. P. 12(b)(1).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) challenges the court's power to hear the case. Where standing is at issue, plaintiff bears the burden of establishing its existence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To establish Article III standing, a plaintiff must demonstrate: (1) an injury in fact that is concrete and particularized; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury is likely to be redressed by a favorable decision. *Id.* at 560–61. A failure to establish any one element deprives the court of subject matter jurisdiction. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

### B. Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations and legal conclusions, even if cast in the form of factual allegations, are insufficient. *Id.* Courts are not required to accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV. LEGAL ARGUMENT.

### A. The Complaint Should Be Dismissed In Its Entirety Because the Communications At Issue Were Not "Telemarketing" Under the TCPA.

#### *1. Telemarketing is a required element of each cause of action.*

UOPX is not liable under any of Plaintiff's causes of action unless the at-issue communications are "telemarketing." *See* Compl. ¶ 71 (accusing UOPX of violating the TCPA "by making telemarketing calls"); *id.* ¶ 76 (same); *id.* ¶ 84 (same). "Telemarketing" or "telephone solicitation" is a required element for each cause of action.[4] *See generally* 47 U.S.C § 227 (only applies to **telephone solicitations**); 47 C.F.R. § 64.1601(e) (only applies to "[a]ny person or entity that engages in **telemarketing**"); 47 C.F.R. § 64.1200(d) (only applies to "call for **telemarketing** purposes" (emphases added)).

Accordingly, if the communications at issue were not telemarketing, all of Plaintiff's claims fail as a matter of law.

---

[4] As this Court has recognized, "[t]he definition of "telemarketing" under the TCPA is substantially similar to the definition of "telephone solicitation." *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1103 n.6 (D. Ariz. 2024). Accordingly, this Motion uses these terms interchangeably.

### 2. *Communications are not telemarketing when they are sent for the purpose of completing an ongoing transaction.*

Courts within the Ninth Circuit have consistently held that communications are not "telemarketing" when they are sent to complete an ongoing business transaction rather than to solicit new business. *See Wick v. Twilio Inc.*, No. C16-00914RSL, 2016 WL 6460316, at *1 (W.D. Wash. Nov. 1, 2016) (dismissing plaintiff's TCPA claim because the court found the text message sent by defendant immediately after plaintiff submitted an inquiry form was not telemarketing); *Aderhold v. Car2go N.A., LLC*, No. C13-489RAJ, 2014 WL 794802, at *9 (W.D. Wash. Feb. 27, 2014), *aff'd*, 668 F. App'x 795 (9th Cir. 2016) (holding that a text message about how to complete the registration process after plaintiff submitted an online registration form is not telemarketing); *An Phan v. Agoda Co. Pte. Ltd.*, 351 F. Supp. 3d 1257, 1259, 1259, 1264 (N.D. Cal. 2018), *aff'd sub nom. Phan v. Agoda Co. Pte. Ltd.*, 798 F. App'x 157 (9th Cir. 2020) (concluding that a text message confirming a dinner reservation and recommending the customer to "view specials" was not advertising or telemarketing because it "only served to confirm an expected commercial transaction . . . that Plaintiff had initiated").

Just like the defendants in this line of cases, UOPX sent these communications to complete an ongoing transaction initiated by Plaintiff. Plaintiff requested information by submitting an application and executing an enrollment agreement prior to receiving any of the communications at issue from UOPX. Compl. ¶ 24. On their face, the two text messages Plaintiff received on February 11 and 12, 2024 were sent directly in response to Plaintiff's inquiry and because he had enrolled in the school—one reminding him to schedule his first class and the other following up about class registration. *Id.* ¶ 27. These messages were not unsolicited telemarketing—they were follow-up communications to complete the transaction Plaintiff himself initiated. The same applies to the voice calls. Plaintiff alleges that UOPX called him on February 17 and February 19, 2024 and left voicemails regarding UOPX's university and programs. *Id.* ¶¶ 36–37, 39–40. Both calls were made within days of Plaintiff's request for information and as a direct continuation of a transaction Plaintiff

had initiated. *Id.* ¶ 24. Indeed, Plaintiff admits that these calls "were sent for the purpose of encouraging enrollment in Defendant's university." *Id.* ¶ 40. Because all communications were intended to complete an ongoing transaction Plaintiff initiated, they were not telemarketing under the TCPA.

Similarly, in *Abboud v. Circle K Stores Inc.*, this Court acknowledged this line of cases where courts have held that communications "were not telemarketing because they were sent to complete an ongoing business transaction." 731 F. Supp. 3d 1094, 1105 (D. Ariz. 2024) (collecting cases).

To be clear, the *Abboud* court found the text messages in that case to be telemarketing because the *Abboud* complaint "alleges . . . that Plaintiff did not have a business relationship with Defendant before receiving the text messages" and therefore "Defendant could not have sent the messages to complete a business transaction." *Id.* However, *Abboud* is readily distinguishable. Unlike in *Abboud*, here, Plaintiff admits (correctly) that he "requested information from Defendant," which prompted UOPX's communications. Compl. ¶ 24. The Complaint further makes clear that UOPX's communications were direct follow-ups for the purposes of completing the transaction Plaintiff initiated. *Id.* ¶¶ 27, 36–37, 39–40.

Because the distinction in *Abboud* does not apply here, the Court should follow its own precedent and other courts within the Circuit and hold that the communications at issue were not telemarketing. Accordingly, all of Plaintiff's claims fail as a matter of law on this threshold requirement.

### B. Plaintiff's Second Cause Of Action Should Also Be Dismissed On Two Additional Grounds.

Even if there were a question as to whether the communications at issue are telemarketing (which there is not), Plaintiff's second cause of action should still be dismissed for two independent reasons. First, 47 C.F.R. § 64.1601(e) should not be read as a *per se* ban on the use of a short code for text messages that are determined to be telemarketing. Second, Plaintiff lacks Article III standing because he did not suffer any concrete injury in fact—let alone ones that this regulation intended to protect against.

As background, "short codes" are **5- or 6-digit numbers** "that can only be used to send and receive text messages." *Moskowitz v. Am. Sav. Bank, F.S.B.*, No. CV 17-00299 HG-RT, 2020 WL 61576, at *3 (D. Haw. Jan. 6, 2020), *aff'd*, 37 F.4th 538 (9th Cir. 2022). Short codes are "administered by the Common Short Code Administration and lease to enterprises." Truth in Caller ID Rules, 84 Fed. Reg. 45669, 45671 (Aug. 30, 2019) (citations omitted). To send text messages via short codes, individuals and entities must register with the Common Short Code Administration. *Id.* (citations omitted). Short codes are commonly used and well recognized as a valid method of sending text messages. *See, e.g.*, *Barton v. Walmart Inc.*, No. 23-5063 DGE-RJB, 2024 WL 1533579, at *3, 9 (W.D. Wash. Apr. 9, 2024), *aff'd*, No. 24-2649, 2025 WL 2977820 (9th Cir. Oct. 22, 2025) (finding no TCPA violation where defendant used short code to send text messages); *Derby v. AOL, Inc.*, No. 5:15-CV-00452-RMW, 2015 WL 5316403, at *1, 6 (N.D. Cal. Sept. 11, 2015) (same); *Bank of America Online Banking Service Agreement*, at 7.B (June 2, 2026), https://secure.bankofamerica.com/login/enroll/displaysa.go (using short codes to send security alerts); *Contact University of Phoenix*, https://www.phoenix.edu/about/contact-us.html (last visited July 15, 2026) (providing short code option (937473) for texting to contact UOPX directly).

47 C.F.R. § 64.1601(e), which first went into effect over 20 years ago, requires telemarketing communications to transmit "caller identification information."[5] 47 C.F.R. § 64.1601(e)(1) further requires that "caller identification information must include either CPN or ANI." The regulation defines "CPN" (Calling Party Number) as the "subscriber line number or the directory number contained in the calling party number parameter of the call set-up message associated with an interstate call on a Signaling System 7 network." 47 C.F.R. § 64.1600(e). "ANI" (Automatic Number Identification) is defined as "delivery of

---

[5] UOPX does not concede that there is a private right of action for 47 C.F.R. § 64.1601(e) violations as this Court has not expressly found a private right of action for this particular regulation. For the sake of this argument, however, UOPX will assume a private right of action exists.

the calling party's billing number by a local exchange carrier to any interconnecting carrier for billing or routing purposes, and to the subsequent delivery of such number to end users." 47 C.F.R. § 64.1600(b). Both CPN and ANI are traditional **10-digit telephone numbers** used to route voice calls and identify the caller's specific line. The Federal Communications Commission (FCC) promulgated 47 C.F.R. § 64.1601(e) to allow "consumers to screen out unwanted calls and to identify companies that they wish to ask not to call again." *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14121–22 (2003).

#### *1. Plaintiff's Second Cause of Action Should Be Dismissed Because 47 C.F.R. § 64.1601(e) Should Not Apply to Text Messages Sent Using Short Codes.*

As at least one other federal court has observed, Plaintiff's counsel "is a frequent filer of Telephone Consumer Protection Act lawsuits" and "sometimes pursues novel legal theories as part of his business model." *Perrong v. S. Bay Energy Corp.*, No. 2:20-cv-05781-JDW, 2021 WL 1387506, at *1 (E.D. Pa. Apr. 13, 2021) (finding that "Mr. Perrong's latest theory has no legs" and denying his motion to amend his complaint). In this lawsuit, Plaintiff sets forth a novel theory that texting using short code violates the 47 C.F.R. § 64.1601(e) because a short code is not a valid CPN or ANI. Compl. ¶ 76. While the TCPA's regulation of solicitation calls has generally been interpreted to include text messages, the specific regulation, 47 C.F.R. § 64.1601(e), cannot rationally be applied to a specific type of text messages: texts sent via short codes. To do so would effectively ban the use of a short code for sending telemarketing communications.

It is clear from the definitions of short codes, CPNs, and ANIs that 1) short codes can never be valid CPNs or ANIs because they explicitly contain different numbers of digits; and 2) subscribers can never "call" short codes because short codes can only be used to send and receive text messages. This definitional incompatibility would render any use of short codes for telemarketing unlawful if 47 C.F.R. § 64.1601(e) applied to short codes.

It defies common sense and logic that regulators intended for such a broad prohibition. ***First***, short codes are generally less ripe for misuse than traditional 10-digit

telephone numbers because a business must register with the Common Short Code Administration first before the Administration can assign a short code. 84 Fed. Reg. 45669, 45671 (citations omitted). In other words, short codes are subject to more supervision compared to traditional telephone numbers. ***Second***, in 2019 the FCC explicitly included short codes in its definition of "text messages" for purposes of its Truth in Caller ID regulations, *i.e.*, 47 C.F.R. § 64.1604. 84 Fed. Reg. 45669, 45671. By doing so, the FCC essentially acknowledged that sometimes it is permissible to send text messages via short codes for telemarketing purposes. It does not make sense for the FCC to expand the definition of text messages this way if any use of short codes for telemarketing is already a *per se* violation under 47 C.F.R. § 64.1601(e).

For the reasons stated above, the FCC could not possibly have intended for 47 C.F.R. § 64.1601(e) to apply to text messages sent using short codes. Accordingly, Plaintiff's second cause of action should also be dismissed on this independent ground.

### 2. *Plaintiff's Second Cause of Action Should Be Dismissed Because Plaintiff Lacks Article III Standing*.

A plaintiff must demonstrate a concrete, particularized injury even when Congress has provided a statutory right of action. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424–26 (2021). The mere existence of a technical statutory violation, without a concrete injury bearing a "close relationship" to a harm traditionally recognized at common law, is insufficient. *Id.* at 425.

Because the FCC promulgated this regulation to allow consumers to identify their callers and request the callers to stop calling, the concrete injuries specifically contemplated by 47 C.F.R. § 64.1601(e) occur where a recipient is (1) not able to identify the caller; and (2) not able to request the caller to stop calling. *See In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14121–22 (2003).

Here, neither injury applies to Plaintiff. ***First***, Plaintiff was able to identify UOPX as the sender of the text messages. Plaintiff received the text messages shortly after he requested information from UOPX, submitted an application, and signed an enrollment

agreement. Plaintiff does not allege that he had any problem identifying the sender. Nor can Plaintiff make such a claim; words such as "Phoenix," "application," and "class" in the text messages eliminate any potential confusion regarding the identity of the sender. Compl. ¶ 27. ***Second***, Plaintiff was able to opt out of receiving more text messages from UOPX by replying "Stop." *Id.* ¶ 25. UOPX immediately confirmed that Plaintiff was "unsubscribed." *Id.* ¶¶ 26–27.

It is worth noting that the general injury standard that "the receipt of unsolicited telemarketing phone calls is 'a concrete injury in fact sufficient to confer Article III standing'" for TCPA cases does not apply here. *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 985–86 (9th Cir. 2023) (quoting *Van Patten v. Vertical Fitness Grp.*, 847 F.3d 1037, 1043 (9th Cir. 2017)). Because Plaintiff's second cause of action specifically invokes the CPN or ANI requirement in 47 C.F.R. § 64.1601(e), the issue here is not whether UOPX can text, but what number UOPX can text with. Therefore, mere receipt of text messages does not constitute concrete injury here. In any event, the *Van Patten* standard does not apply because the text messages at issue were not "unsolicited"—as alleged in the Complaint, Plaintiff requested information from UOPX first. Compl. ¶ 24.

Accordingly, even if UOPX's failure to use a CPN or ANI violates 47 C.F.R. § 64.1601(e), Plaintiff did not suffer any concrete injury-in-fact because Plaintiff was able to identify UOPX as the sender of the text messages and opt out of receiving further text messages. Therefore, Plaintiff's second cause of action must be dismissed for lack of Article III standing pursuant to Rule 12(b)(1).

### C. Plaintiff's First And Third Causes Of Action Should Also Be Dismissed Because These Calls Were Placed Within A Legally Permissible Safe Harbor After Plaintiff Texted "Stop."

This Court recently held that messages "sent within a reasonable time (not to exceed 30 days) after Plaintiff made his do-not-call request . . . are not actionable under the TCPA." *Crews v. Sun Solutions AZ LLC*, No. CV-23-01589-PHX-DWL, 2024 WL 2923709, at *6 (D. Ariz. June 10, 2024) (collecting cases).

The same principle should apply here. Plaintiff texted "Stop" to UOPX on February 12, 2024 and was unsubscribed from receiving text messages from UOPX. Compl. ¶ 27. Plaintiff subsequently received two voice calls only five and seven calendar days afterwards.[6] *Id.* ¶ 37. Because UOPX's voice calls were placed "within a reasonable time" as this Court has recognized, these voice calls "are not actionable under the TCPA." *Crews*, 2024 WL 2923709, at *6.[7] Therefore, Plaintiff's first and third causes of action should be dismissed on this independent ground.

## V. CONCLUSION.

WHEREFORE, for the foregoing reasons, Defendant Phoenix Education Partners, Inc. respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety with prejudice and award UOPX such other and further relief as the Court deems just and proper.

Dated: August 17, 2026

HUSCH BLACKWELL LLP

By: */s/ Matthew D. Knepper*
Matthew Knepper (pro hac vice)
Sarah Zimmerman (pro hac vice)
Brendan Melander
*Attorneys for Defendant Phoenix Education Partners, Inc.*

---

[6] UOPX does not concede that Plaintiff revoked his consent to receiving voice calls on February 12, 2024. For the sake of argument that is limited to this Motion, however, UOPX will assume that Plaintiff revoked his consent on February 12, 2024 by texting "Stop."

[7] Even if the Court decides to depart from *Crews* and apply the more stringent standard under 47 C.F.R. § 64.1200(a)(10), which requires UOPX to honor Plaintiff's do-not-call request within 10 business days, the voice calls at issue were still placed within that timeframe.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of August, 2026, I electronically filed with the Clerk of the Court using the ECF system.

The ECF system will send notification of such filing to:

Andrew Perrong
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
a@perronglaw.com
*Attorney for Plaintiff Asher Bronstin*

*/s/ Claudina Mazon*
Claudina Mazon