Andrew Perrong
Counsel for Plaintiff
Email: a@perronglaw.com
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Telephone: (215) 225-5529

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Asher Bronstin, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Phoenix Education Partners Inc.<br>d/b/a<br>University of Phoenix<br><br>Defendant. | Case No. 2:26-cv-03400-DJH<br><br>**PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS** |

**Introduction**

Defendant's Motion asks the Court to resolve disputed factual questions in its favor, create a judicial exception to an unambiguous FCC regulation, and disregard Ninth Circuit authority, all at the pleading stage. The Motion should be denied.

Plaintiff alleges a straightforward course of conduct. After Plaintiff initially requested information from Defendant, Defendant sent communications. Plaintiff then unequivocally told Defendant to "Stop." Defendant immediately confirmed that Plaintiff had been "unsubscribed" and "would no longer receive messages." Yet Defendant continued its solicitation efforts, placing two additional calls to Plaintiff only days later.

Defendant principally attempts to avoid those allegations by characterizing every communication as merely part of an "ongoing transaction." But that characterization is neither alleged in the Complaint nor an inference that may be drawn in Defendant's favor. Under controlling authority, whether Defendant was communicating with Plaintiff to persuade him to purchase Defendant's educational services presents, at minimum, a factual question that cannot be resolved against Plaintiff under Rule 12(b)(6).

Defendant's remaining arguments fare no better. As to Plaintiff's Caller ID claim, Defendant *concedes* it violated 47 C.F.R. § 64.1601(e) but asks the Court to infer an exception unsupported by the regulation. And Defendant's standing argument disregards the plain ways that caller ID information helps protect consumer privacy. Finally, Defendant cannot establish from the face of the Complaint that its post-request calls necessarily fell within a lawful "safe harbor" because Defendant not only acknowledged Plaintiff's do not call request but also because any purported consent was revoked.

The Complaint plausibly alleges violations of the TCPA. Defendant's contrary arguments depend upon disputed facts, inferences drawn against Plaintiff, and legal conclusions that cannot support dismissal at this stage. The Motion should be denied.

## **Background**

Plaintiff uses his telephone number for personal, residential, and household purposes and has been registered on the National Do Not Call Registry for more than a year before the communications at issue. ECF No. 1, Complaint ("Compl.") at ¶¶ 20-23. In February 2024, Plaintiff requested information from Defendant. Compl. ¶ 24. Defendant thereafter began contacting Plaintiff. *Id*. The Complaint outlines the four communications Plaintiff received which he contends violated the TCPA. Compl. ¶¶ 27, 36-39. Plaintiff alleges that the number from which he received the text messages is neither a valid CPN nor ANI and cannot be called to make a do-not-call request during regular business hours. Compl. ¶¶ 28-34.

On February 12, 2024, Plaintiff responded to Defendant's communications with an unequivocal instruction: "Stop." Compl. ¶ 27. Defendant immediately acknowledged. *Id.* Defendant nevertheless continued contacting Plaintiff. Compl. ¶¶ 35-38. The Complaint alleges that these communications advertised Defendant's university and programs and were made for the purpose of advertising Defendant's university. Compl. ¶¶ 48-49.

## **Argument**

### A. The Complaint Plausibly Alleges That Defendant's Communications Were Telemarketing.

Defendant's threshold argument is that all three causes of action fail because the communications at issue were not "telemarketing." Mot. at 5-8. According to Defendant,

because Plaintiff initially requested information about the University of Phoenix, every communication that followed necessarily concerned an "ongoing transaction" initiated by Plaintiff and therefore falls outside the TCPA. *Id*. That argument cannot be reconciled with the Ninth Circuit's recent decision in *Coffey v. Fast Easy Offer, LLC*, 178 F.4th 480 (9th Cir. 2026).

### 1. *Coffey* Requires the Court to Consider Defendant's Purpose in Initiating the Communications.

The TCPA defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15); *Coffey*, 178 F.4th at 481. In *Coffey*, the Ninth Circuit addressed precisely how courts must apply that definition at the pleading stage. There, the plaintiff received calls asking whether she had "given up on selling" her property. *Id.* at 482. The district court dismissed the complaint with prejudice because the communications did not expressly encourage the plaintiff to purchase any services. *Id.* The Ninth Circuit reversed. *Id.* at 484.

The Ninth Circuit held that the relevant "purpose" is the defendant's purpose in initiating the call or message. *Id.* at 483. Accordingly, "[g]iving meaning to the whole definition as drafted requires consideration of the purpose of the initiation of the calls and messages at issue." *Id.* That inquiry is not confined to the literal words contained in the communication. Relying on *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012), the Ninth Circuit reaffirmed that "[n]either the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the

context." *Coffey*, 178 F.4th at 483 (quoting *Chesbro*, 705 F.3d at 918). A court therefore "must consider not only the content of the messages [the plaintiff] received, but also their context as it illuminates Defendants' purpose in initiating the messages." *Id. Coffey* held that the plaintiff adequately alleged telephone solicitations because she alleged that one purpose for initiating the communications was to encourage consumers to purchase defendants' services. *Id.* at 484. Though disputed, the Ninth Circuit credited the plaintiff's factual allegations, the fact that "one purpose" of initiating the messages was to encourage the purchase of services was "enough to satisfy the statutory definition." *Id.*

The same result follows here. The Complaint alleges that Defendant initiated the calls to advertise the University of Phoenix and its programs and that they were made "to generate sales," increase traffic to its website, and "promote Defendant's for-profit university." Compl. ¶¶ 48-50. Those are direct allegations concerning Defendant's purpose in initiating the communications, the very inquiry *Coffey* holds controls. The content of Defendant's messages reinforces those allegations. Defendant told Plaintiff he was "so close to becoming a Phoenix," and subsequently told him that it was "time to talk about getting registered for class." Compl. ¶ 27. The voice calls were substantially similar. Compl. ¶ 39. Viewed together with Plaintiff's allegations concerning Defendant's purpose, those communications plausibly reflect an effort to move Plaintiff toward enrollment in Defendant's for-profit educational classes.

Indeed, Defendant acknowledges that Plaintiff alleges the calls were made "to encourage Plaintiff to complete his enrollment." Mot. at 4. Defendant nevertheless argues that this allegation somehow demonstrates that the calls were not solicitations because

Plaintiff had previously requested information from Defendant. But under *Coffey*, the relevant question is *not* whether Plaintiff had some prior interaction with Defendant. It is whether Defendant initiated the challenged communications, at least in part, for *the purpose of encouraging the purchase of its services*. 178 F.4th at 483-84. The Complaint expressly alleges that it did. At the pleading stage, nothing more is required. Plaintiff alleges that Defendant initiated its communications to encourage enrollment in, generate sales for, and promote its for-profit university, which is sufficient under *Coffey*.

### 2. Plaintiff's Prior Request for Information Does Not Establish as a Matter of Law That Defendant's Subsequent Communications Were Merely Transactional.

Defendant attempts to avoid this result by characterizing the communications as follow-ups intended only to "complete an ongoing transaction" initiated by Plaintiff. Mot. at 6-8. But *Coffey* expressly declined to engage in a competing collection of non-binding decisions addressing what constitutes a telephone solicitation. 178 F.4th at 484 n.4. The Ninth Circuit found that exercise unnecessary because "[the] well-pleaded allegations provide a clear basis for decision at the motion to dismiss stage." *Id.*

Nor does *Coffey* establish an exception whenever the recipient previously expressed some interest in the defendant's services. Rather, it instructs courts to consider the content and context of the challenged communications insofar as they illuminate the defendant's purpose in initiating them. *Id.* at 483. Thus, the fact that Plaintiff initially requested information, in fact, informs the analysis in *Plaintiff's* favor because it shows that Defendant was attempting to persuade Plaintiff to enroll in classes at the university, for which the university would charge Plaintiff and make a profit. Defendant's cited cases

support a categorical rule that any communication following a consumer inquiry is necessarily transactional. Each turned on the purpose of the particular communication, and each involved a communication confined to facilitating, confirming, or completing a transaction the consumer had already initiated.

In *Aderhold*, for example, the plaintiff completed a membership in a car sharing service and received a text containing an activation code. *Aderhold*, 2014 WL 794802, at *1. In *Aderhold*, what was sent was a clearly transactional *activation code*, not language expressly encouraging enrollment in for-profit educational classes. *Wick* applied similar reasoning. There, the plaintiff entered his information into a website to obtain a *free sample*, abandoned the process before completing the order, and received a call stating that his order for the free sample was about to expire. *Wick*, 2016 WL 6460316, at *1. The Court concluded that those communications had a customer service purpose that did not encourage him to *purchase* anything other than a *free* sample. *Id.* at *3

And *An Phan* was decided on a developed summary judgment record on facts akin to *Aderhold* and *Wick*. 351 F. Supp. 3d at 1259, 1260-61. There, the plaintiff had already booked hotel accommodations through Agoda, and Agoda sent texts confirming those specific bookings and telling him that he could "Manage your booking with our free app." *Id.* at 1259. Given that the booking was already completed and paid for, the purpose of confirming and managing a booking was merely transactional and the call did not encourage the purchase of goods or services. *Id.* at 1265-66.

That reasoning does not compel dismissal here. Plaintiff does not allege that Defendant merely supplied an activation code necessary to access services already

obtained or provided information necessary to enroll in classes *he already purchased*. The Complaint further alleges that Defendant's calls were initiated for the purpose of encouraging enrollment in Defendant's university, including enrolling in classes he would need to pay for. And Plaintiff alleges that Defendant initiated the communications to generate sales and promote its for-profit university. Those allegations present the commercial purpose absent from Defendant's authorities. More importantly, *Coffey* now supplies controlling Ninth Circuit guidance. The relevant inquiry is Defendant's purpose in initiating the communication, assessed through both its content and context, and a complaint sufficiently pleads a telephone solicitation where one purpose of the initiation was to encourage the purchase of services. *See Coffey*, 178 F.4th at 483-84.

Thus, even if some aspect of Defendant's communications related to Plaintiff's prior inquiry or application, that does not negate the separately alleged purpose of encouraging Plaintiff to complete enrollment, select and enroll in classes that he would have to pay for, and obtain Defendant's educational services. Crediting those allegations as the Court must, Plaintiff has plausibly alleged telephone solicitations under *Coffey*. See *id.* at 484 ("one purpose" of initiating the messages was to encourage the purchase of services, which was "enough to satisfy the statutory definition").

### B. <u>Defendant Concedes it Violated 47 C.F.R. § 64.1601(e)</u>

Defendant does not dispute that it failed to transmit a CPN or ANI. It concedes the opposite. Its motion makes clear that "short codes can never be valid CPNs or ANIs because they explicitly contain different numbers of digits," and that "subscribers can never 'call' short codes because short codes can only be used to send and receive text

messages." Mot. at 9. That is Plaintiff's entire claim admitted. Having conceded every operative fact, UOPX is left arguing that the regulation should not mean what it says because "[i]t defies common sense and logic that regulators intended for such a broad prohibition." *Id.* That is a policy grievance addressed to the wrong place.

The regulatory and technical premises are not in dispute, and they are anchored to the public switched telephone network. Section 64.1600(e) defines CPN as the "subscriber line number . . . on a Signaling System 7 network," and § 64.1600(b) defines ANI in terms of the delivery of the calling party's billing number by a local exchange carrier for billing or routing purposes. The FCC has reaffirmed that SS7 anchoring expressly. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788, 3809 n.148 (2005).

The Complaint alleges, and Defendant does not deny, that the short code 937473 is not a compliant CPN, that consequently no CPN and no ANI was transmitted at all, that 937473 is not routable via the SS7 network, that no individual can place a voice call to 937473 to lodge a do-not-call request during regular business hours, and that no alternate number is supplied to anyone who tries. Indeed, it's equally as evident that even a purportedly acknowledged text message call to 937473, in the exact form for revocation of consent deemed sufficient by the FCC, doesn't even suffice to lodge a do not call request. Defendant thus agrees with Plaintiff's point but instead resorts to arguing policy.

Defendant's policy arguments provide no basis for rewriting the text. First, its parade of horribles is a misdirection. Plaintiff's position is not that short codes are categorically unlawful. Section 64.1601(e) applies on its face only to "telemarketing," and says

nothing about things like appointment reminders or fraud alerts. Those uses remain lawful. What Plaintiff contends is that a company electing to use a short code *for telemarketing* must comply with the caller ID requirement the FCC built into the *telemarketing* regime, most obviously by using a SS7-routable ten-digit number, as Defendant itself did days later when it placed the voice calls to Plaintiff. Relatedly, Defendant's argument about registration for short codes and the presence of other FCC regulations about them says nothing about § 64.1601(e), nor does it amend its definitions.

Finally, *Moskowitz*, *Walmart*, and *Derby* are all inapposite because *none of those cases* analyzed a § 64.1601(e) claim. And another Court has already observed that the FCC has already considered and *declined* to adopt alternative compliance mechanisms for the transmission of text calls. *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571, 584-85 (E.D. Pa. 2025) (text that transmitted website URL still violated § 64.1601(e)). "Only the written word is the law, and all persons are entitled to its benefit." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 653 (2020). If Defendant believes the rule should carve out short codes, its recourse lies with Congress and the FCC, not this Court on a 12(b)(6).

**C. Failure to Transmit Caller ID is an Article III Harm.**

Defendant's facial 12(b)(1) standing argument rests on a factual premise the Complaint refutes. Because UOPX mounts a facial attack, the Court must accept Plaintiff's well-pleaded jurisdictional allegations as true. Defendant asserts that Plaintiff suffered no injury because he opted out and was allegedly unsubscribed. Not so. Plaintiff asked Defendant to stop, and Defendant called him anyway, twice, on February 17 and February 19. The opt-out mechanism Defendant offers as proof that Plaintiff was

uninjured is the very mechanism that failed him. It cannot simultaneously argue that the short code was able to receive and process do not call requests during regular business hours when the Plaintiff made such a request through the only method available, text, as opposed to an SS7-routable CPN as § 64.1601(e) requires, and then continued to get calls. Had Defendant transmitted Plaintiff a valid number, precisely the outcome the regulation exists to make possible, the Plaintiff would likely have not been called twice more. The injury is not hypothetical because the calls that followed are in the Complaint.

The Court in *Novia v. Mobiz, Inc.* already addressed this standing analysis. No. 25-CV-11036-AK, 2026 WL 752181 (D. Mass. Mar. 17, 2026). The *Novia* court held that the injury was particularized because the absence of compliant caller ID undermined Plaintiff's trust in the source of the messages, made it harder to identify who was soliciting him and whom to ask to stop, and cost him time. *Id.* at *2. And the court held it is concrete because § 64.1601(e)(1) entitles the recipient to information the telemarketer withheld, which is the exact type of statutory injury the Supreme Court has recognized, no matter how small it may be. *Id.* Finally, the *Novia* Court rejected Defendant's precise fallback, that the recipient could tell who sent the message from its content, holding that the argument "does not address the injury [Plaintiff] experienced by having to waste time checking the text messages," and that directing a consumer to some other channel "puts the onus . . . on the recipient of the text." *Id.* at *2-3 (quoting *Newell*, 791 F. Supp. 3d at 584); *accord Van Patten v. Vert. Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (holding that "[t]he TCPA establishes the substantive right to be free from certain types of phone calls and texts" and that calls "present the precise harm and infringe the same

privacy interests Congress sought to protect in enacting the TCPA" because "unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients."). Plaintiff has standing, and the second cause of action should proceed.

### D. Whether Defendant Honored Plaintiff's Do-Not-Call Request Within a Reasonable Time Is a Question of Fact Not Appropriate for Resolution on a Motion to Dismiss.

Defendant argues that Plaintiff's First and Third Causes of Action fail because the two voice calls made after Plaintiff's do not call request occurred within a purported regulatory "safe harbor." Mot. at 11-12. Specifically, Defendant relies on *Crews v. Sun Solutions AZ LLC*, No. CV-23-01589-PHX-DWL, 2024 WL 2923709 (D. Ariz. June 10, 2024), and contends that because Defendant called Plaintiff only five and seven days after Plaintiff said "Stop," those calls are categorically "not actionable under the TCPA." Mot. at 12. That is not what the regulation says, and it is not what *Crews* holds.

As a threshold matter, the safe harbor Defendant invokes has no application to the First Cause of Action at all. Section 64.1200(d)(3) is a component of the *internal*, company specific do not call architecture of § 64.1200(d), which obligates a seller to maintain written procedures and a company specific list and to record and honor seller specific requests. It supplies the timing rule for *that* obligation. Plaintiff's First Cause of Action does not arise under § 64.1200(d). It arises under § 64.1200(c)(2), which *independently* prohibits any telephone solicitation to a residential subscriber whose number is registered on the National Do Not Call Registry absent consent, and nothing in § 64.1200(c) contains a grace period, a processing window, or a reasonable time

allowance of any kind. In any event, as will be explained below, Defendant received, acknowledged, and purportedly processed the request immediately in any event but called Plaintiff anyway. Defendant cannot import a timing provision from one regulatory regime to excuse liability under a different one. *Crews* itself was an internal do not call case decided on a default judgment record, says nothing about the National DNC regime, and Defendant cites no authority extending § 64.1200(d)(3) to a § 64.1200(c)(2) claim, because there is none. Defendant's alternative reliance on 47 C.F.R. § 64.1200(a)(10), Mot. at 12 n.7, fares worse still. That provision implements the revocation rules for calls governed by § 227(b), not the National DNC protections of § 227(c), and, in any event, it did not exist when these calls were placed in February 2024.

The reason for the difference is structural. Under the National DNC regime, calls to a registered number are unlawful unless an exception applies, most relevantly, prior express invitation or permission satisfying § 64.1200(c)(2)(ii), or an existing business relationship as defined in § 64.1200(f)(5). Both are affirmative defenses on which Defendant bears the burden, and both evaporate the moment the subscriber asks the seller to stop. The regulation says so expressly: a seller-specific do-not-call request "terminates an existing business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller." 47 C.F.R. § 64.1200(f)(5)(i). Termination, by this very text, is immediate, and the text admits of no interval during which the exception lingers on while the seller's internal systems catch up. And a revocation need only "clearly express [a] desire not to receive further calls" to be effective. *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir.

2017). Defendant has assumed, for purposes of this Motion, that Plaintiff revoked on February 12, 2024. Mot. at 12 n.6. That concession is dispositive of the threshold question as it pertains to the National Do Not Call claim. As of February 12, whatever exception or consent Defendant might have claimed was gone, Plaintiff's number remained on the Registry, and the telemarketing calls of February 17 and February 19 were solicitations to a registered number with no exception available. The First Cause of Action is therefore unaffected by § 64.1200(d)(3) entirely. The reasonableness analysis that follows is directed to the Third Cause of Action, where the provision actually applies, and, as shown below, it does not help Defendant there either.

At the time of the calls at issue, 47 C.F.R. § 64.1200(d)(3), which deals *only* with a separate cause of action for failure to honor an internal do not call request, required a telemarketer to honor a residential subscriber's do-not-call request "within a reasonable time from the date such request is made," and provided that "[t]his period may not exceed thirty days from the date of such request." The regulation thus imposed two separate requirements: Defendant had to act within a *reasonable time,* and under no circumstances could that period exceed thirty days. Defendant's argument improperly collapses those requirements by treating the thirty-day outer limit as an affirmative license to continue telemarketing during that entire period.

A plain reading of § 64.1200(d)(3) establishes only that a delay exceeding thirty days is necessarily *unreasonable*. It does not establish the converse, that every delay shorter than thirty days is necessarily reasonable, and particularly not where, as here, Defendant acknowledged that it had received and processed the Plaintiff's request. Had

the FCC intended to create a thirty-day grace period during which continued telemarketing was categorically lawful in order for a company to update its internal lists, it could have said so. Instead, the FCC chose a reasonableness standard. What constitutes a "reasonable time" therefore depends upon the circumstances surrounding the defendant's receipt and implementation of the consumer's do not call request.

The majority of courts to address the issue have followed that straightforward reading and rejected the same categorical safe harbor theory Defendant advances here. *See Gill v. Align Tech. Inc.*, No. 21-CV-631-JPS-JPS, 2022 WL 1540016, at *4 (E.D. Wis. May 16, 2022) (holding that the reasonableness of defendant's efforts to honor a do-not-call request presented a question for the jury); *Delgado v. eMortgage Funding, LLC*, No. 21-CV-11401, 2021 WL 4776774, at *5 (E.D. Mich. Oct. 13, 2021) ("Although § 64.1200(d)(3) states that a thirty-day delay in honoring do not call requests is per se unreasonable, it does not state that any shorter delay is per se reasonable."); *Boger v. Citrix Sys., Inc.*, No. 8:19-CV-01234-PX, 2020 WL 1033566, at *5 (D. Md. Mar. 3, 2020) (rejecting the contention that § 64.1200(d)(3) "create[s] a safe harbor for follow up calls placed within thirty days" and holding reasonableness was "a question of fact best left for development in discovery"); *Nece v. Quicken Loans, Inc.*, No. 8:16-CV-2605-T-23CPT, 2018 WL 1326885, at *7 (M.D. Fla. Mar. 15, 2018) (holding that "a jury must decide whether Quicken honored Nece's do-not-call request in a reasonable time"); *Buja v. Novation Cap., LLC*, No. 15-81002-CIV, 2017 WL 10398957, at *6 (S.D. Fla. Mar. 31, 2017) (declining to determine as a matter of law that a delay of two or three weeks was

reasonable); *Martin v. Comcast Corp.*, No. 12 C 6421, 2013 WL 6229934, at *6 (N.D. Ill. Nov. 26, 2013) (same, one to two weeks).

As *Gill* recognized, the reasonableness inquiry necessarily depends upon how the defendant actually processes do-not-call requests. If a defendant's system permits it to "easily and immediately remove a person from a call list," a jury could conclude that even a much shorter delay was unreasonable. *Gill*, 2022 WL 1540016 at *4. That is precisely why this issue cannot ordinarily be resolved merely by counting the number of days between the request and the subsequent communication.

Here, the Complaint alleges facts from which a factfinder could readily conclude that Defendant's continued calls were unreasonable. Plaintiff did not merely submit a do not call request that disappeared into an unknown processing system. On February 12, 2024, Plaintiff sent Defendant an unequivocal "Stop" message. Defendant immediately responded that Plaintiff had been "unsubscribed" and "would no longer receive messages." Compl. ¶¶ 25-27. Defendant nevertheless continued contacting Plaintiff with voice call messages, on February 17 and February 19, 2024. Compl. ¶¶ 35-38. The Complaint further alleges that those calls advertised Defendant's university and programs and were made for the purpose of encouraging Plaintiff's enrollment. Compl. ¶¶ 39-40. Defendant's confirmation that Plaintiff had been "unsubscribed" supports a reasonable inference that Defendant's system had received, recognized, and processed Plaintiff's request immediately. The issue therefore is not whether Defendant might hypothetically have needed five or seven days to process Plaintiff's request. According to the Complaint, Defendant represented that the request had already been processed. Yet

Defendant continued calling Plaintiff anyway. At the pleading stage, the Court must draw the reasonable inference in Plaintiff's favor that Defendant possessed the ability to cease further communications but failed to do so.

Defendant's reliance on *Crews* does not compel a different result. *Crews* arose in a materially different procedural and factual posture. There, the Court was deciding a motion for default judgment based upon a *pro se* complaint containing limited allegations concerning the defendant's internal do not call procedures. 2024 WL 2923709, at *1, *6. Although the *Crews* Court described messages sent within the thirty-day period as being sent within a "reasonable time" on the facts there, the court expressly recognized that liability could "theoretically be available for a communication sent during the 30-day grace period," if only the ill-pled *pro se* complaint contained facts that plausibly suggested that the defendant failed to honor do not call requests in a reasonable amount of time. *Id.* at *6 n.6.

The critical deficiency observed by the *Crews* court, that the complaint failed to allege any facts that the defendant failed to honor such requests in a reasonable period of time, is absent entirely here. Plaintiff specifically alleges that Defendant received his "Stop" request, immediately acknowledged it, affirmatively represented that he had been unsubscribed, and then nevertheless initiated two additional calls to the Plaintiff. Thus, even under *Crews*' own reasoning, Plaintiff has alleged the additional facts necessary to plausibly show that Defendant failed to honor his do not call request within a reasonable time because it had already acknowledged that it processed it but called anyway.

Indeed, Defendant's interpretation of *Crews* would transform an outer regulatory limit into exactly the kind of categorical safe harbor that § 64.1200(d)(3) does not contain. Under Defendant's theory, a telemarketer could receive and fully process a consumer's do not call request on day one, confirm to the consumer that no further messages would be sent, and nevertheless intentionally continue telemarketing for weeks without liability so long as it stopped before day thirty. Nothing in the regulation supports that result. The operative requirement remained that Defendant honor the request within a *reasonable time*, not simply sometime before the maximum regulatory deadline. And the outer boundary of reasonability here is taking Defendant at its word.

Whether Defendant acted reasonably turns on facts concerning when Plaintiff's request was processed, why Defendant confirmed that Plaintiff had already been unsubscribed but continued to call, and why promotional messages continued thereafter. Those questions cannot be answered from the face of the Complaint and are appropriately addressed through discovery. Accordingly, § 64.1200(d)(3) does not provide Defendant a categorical safe harbor for its February 17 and February 19 call and presents a factual question that cannot be resolved against Plaintiff on a motion to dismiss.

## **Conclusion**

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss. To the extent the court finds any of the pleading insufficient, the Court should grant leave to amend.

**Dated: August 31, 2026**

*/s/ Andrew Perrong*

Andrew Perrong (PHV)
Email: a@perronglaw.com
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Telephone: (215) 225-5529

**Certificate of Service**

I, hereby certify that on August 31, 2026, I served the foregoing by filing a copy via CM/ECF.

*/s/ Andrew Perrong*

Andrew Perrong (PHV)
Email: a@perronglaw.com
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Telephone: (215) 225-5529