Matthew Knepper, *admitted pro hac vice*
Sarah Zimmerman, *admitted pro hac vice*
Brendan Melander, SBN 034777
HUSCH BLACKWELL LLP
8001 Forsyth Blvd., Suite 1500
St. Louis, Missouri 63105
Telephone: (314) 480-1500
Facsimile: (314) 480-1505
Matt.Knepper@huschblackwell.com

*Attorneys for Defendant Phoenix Education Partners, Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Asher Bronstin, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Phoenix Education Partners Inc. d/b/a University of Phoenix,<br><br>Defendant. | Case No. 2:26-cv-03400-DJH<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>**(Oral Argument Requested)**<br><br>(Assigned to the Honorable Diane J. Humetewa) |

## I. INTRODUCTION.

Plaintiff's Opposition does not dispute the most fatal fact to his Complaint: Plaintiff, not UOPX, initiated the transaction that led to all the communications at issue. Compl. ¶ 24. Plaintiff's Opposition tries to escape that fact by re-characterizing the circumstances as an unsolicited telemarketing dispute governed by *Coffey v. Fast Easy Offer, LLC*, 178 F.4th 480 (9th Cir. 2026). But Plaintiff never engages with what makes *Coffey* different: the *Coffey* plaintiff had no pre-existing relationship with the defendant and never initiated any transaction. *Id.* at 482. Bronstin did. Nothing in *Coffey* disturbs the settled Ninth Circuit precedent, acknowledged by this Court in *Abboud*, that communications sent to complete a transaction the plaintiff initiated are not "telemarketing" under the TCPA provision invoked

by plaintiff, as a matter of law.

Plaintiff's remaining arguments fare no better. Plaintiff's own Opposition proves UOPX's point on short codes: Plaintiff concedes that compliance with 47 C.F.R. § 64.1601(e) would require UOPX to abandon short codes altogether in favor of "an SS7-routable ten-digit number." Opp. at 10. Plaintiff's proposed reading of § 64.1601(e) produces the absurd, categorical prohibition on short code telemarketing that defies common sense and logic. This is especially problematic because the Federal Communication Commission (the "FCC") has indicated through its rule making that short codes can be used for telemarketing purposes.

On Article III standing, Plaintiff conflates two different causes of action and two different types of communications, asking the Court to consider the later voice calls to determine whether Plaintiff was injured by the prior short code text messages. There was no injury arising from the alleged short code violation: Plaintiff does not and cannot allege that he was ever confused about who was texting him or that he was unable to opt out of the texts.

Finally, Plaintiff's own pleaded facts confirm that UOPX ceased texting immediately after Plaintiff texted "Stop." Compl. ¶¶ 26–27. The two voice calls that followed, placed five and seven days later, fell comfortably within the reasonable-time safe harbor this Court recognized in *Crews*.

The Court should dismiss the Complaint in its entirety, with prejudice.

## II. ARGUMENT.

### A. The Communications At Issue Were Not Telemarketing Because They Were Sent To Complete A Transaction Plaintiff Himself Initiated.

#### *1. Coffey* Does Not Apply Because, Unlike Here, The Communications In *Coffey* Were Unsolicited.

Whether the communications at issue were telemarketing at all is a threshold, dispositive question. If the communications are not telemarketing, as UOPX makes clear in its initial Motion and here, Plaintiff's claims cannot survive. Plaintiff rests his Opposition

almost entirely on *Coffey*, while ignoring the single most important fact that distinguishes *Coffey* from this case: In *Coffey*, the plaintiff had no prior relationship with the defendant; she received unsolicited calls *out of the blue* asking whether she had "given up on selling" her property. 178 F.4th at 482. The *Coffey* plaintiff did not initiate any transaction with the defendant, which is precisely why the Ninth Circuit had to examine the content and context of the calls to discern the defendant's purpose. *Id.* at 483.

By contrast, Plaintiff concedes that he initiated the transaction which led to all the communications at issue: Plaintiff admits that he "requested information from Defendant" and that UOPX's communications followed that request. Compl. ¶ 24. The first text message from UOPX told Plaintiff he was "so close to becoming a Phoenix" and asked him to "finalize [his] application and schedule [his] first class," and the second referenced UOPX having "received [his] admissions application" and the need to talk about "getting registered for class." Compl. ¶ 27. Those are not unsolicited cold calls to a stranger; they are status updates and next steps addressed to a person who submitted an application to the school, to assist an interested student in getting their degree. The two voice calls that followed, which Plaintiff admits were "sent for the purpose of encouraging enrollment in Defendant's university," Compl. ¶ 40, continued that same follow-up regarding the same transaction that Plaintiff initiated.

Accordingly, Plaintiff's reliance on *Coffey* is misplaced. *Coffey* merely holds that a defendant's purpose in initiating communications is relevant in determining whether the communications are telemarketing. But *Coffey* is silent on whether communications sent to complete a transaction initiated by the plaintiff are telemarketing. Indeed, because the communications in *Coffey* were unsolicited, the *Coffey* court did not even address, let alone purport to abrogate the well-established line of cases holding that communications sent to complete a transaction the recipient initiated are not telemarketing. *See Aderhold v. Car2go N.A., LLC*, No. C13-489RAJ, 2014 WL 794802, at *9 (W.D. Wash. Feb. 27, 2014), *aff'd*, 668 F. App'x 795 (9th Cir. 2016); *Wick v. Twilio Inc.*, No. C16-00914RSL, 2016 WL 6460316, at *1 (W.D. Wash. Nov. 1, 2016); *An Phan v. Agoda Co. Pte. Ltd.*, 351 F. Supp.

3d 1257, 1264 (N.D. Cal. 2018), *aff'd sub nom. Phan v. Agoda Co. Pte. Ltd.*, 798 F. App'x 157 (9th Cir. 2020); *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1105 (D. Ariz. 2024). If the Ninth Circuit intended to overturn the ongoing-transaction line of cases that this Court and others have applied for over a decade, it would have said so explicitly.

***2. The Ongoing Business Transaction Line Of Cases Controls Here.***

Plaintiff attempts to distinguish *Aderhold*, *Wick*, and *An Phan* by arguing that those cases involved purely administrative content (an activation code to complete registration, a reminder to complete an abandoned order, a booking confirmation), whereas UOPX's communications were somehow different because they "encouraged enrollment." Opp. at 6–8. But as this Court recognized in *Abboud*, the communications in these cases "were not telemarketing because they were sent to complete an ongoing business transaction." 731 F. Supp. 3d at 1105.

In *Aderhold*, the plaintiff initiated the registration process but chose not to complete it. 2014 WL 794802, at *9. The *Aderhold* court held that the communications at issue were not telemarketing because they were sent to allow plaintiff to complete the registration process. *Id.* In *Wick*, plaintiff initiated an order but chose not to complete it. 2016 WL 6460316, at *3. The *Wick* court held that the communications at issue were not telemarketing because they did not encourage the purchase of anything other than the transaction plaintiff had initiated. Plaintiff misplaces emphasis on the value of the item the *Wick* plaintiff ordered, Opp. at 7, but that was not what the *Wick* court rested on: The determinative fact in *Wick* is that the communications did not go beyond the transaction plaintiff initiated; the value of the order is irrelevant. 2016 WL 6460316, at *3. Similarly, the *An Phan* court observed that communications sent to "facilitate, complete, or confirm" a transaction a customer has agreed to or "**in the process of negotiating"** are not telemarketing. *See* 351 F. Supp. 3d at 1263 (citations omitted).

The communications in these cases are directly analogous to UOPX's communications at issue—to respond to and follow up on Plaintiff's request for information and application, for the purpose of completing the transaction Plaintiff initiated. UOPX's

communications never went beyond the scope of what Plaintiff initiated. Because Plaintiff, unlike the *Abboud* plaintiff, admits that he was engaging in a transaction with UOPX before receiving any of the challenged communications, Compl. ¶ 24, *Abboud*'s reasoning compels dismissal here.

**B. Plaintiff's Second Cause Of Action Should Also Be Dismissed Because Short Codes Are Not Subject To 47 C.F.R. § 64.1601(e), And Plaintiff's Own Argument Confirms Why.**

***1. UOPX's Position Is A Matter Of Regulatory Interpretation, Not A "Policy Grievance."***

Plaintiff contends that UOPX's argument that § 64.1601(e) should not be applied to short code text messages is a "policy grievance." Opp. at 7–8. Not so. UOPX is not asking the Court to disregard or rewrite § 64.1601(e)'s regulatory text. Rather, it is well within the Court's purview to determine how the regulatory text should be reasonably interpreted and applied. Plaintiff does not dispute that short codes can never be valid CPNs or ANIs by definition. *Id.* It is therefore a genuine legal question whether § 64.1601(e) should be interpreted so broadly as to outlaw all telemarketing activities using short codes, especially when the FCC has never taken such a drastic position. It is proper for the Court to consider such a question at the motion to dismiss stage. *See Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550 (9th Cir. 2016) (reviewing questions of statutory interpretation at the motion to dismiss stage).

***2. Plaintiff's Own Proposed Interpretation Confirms That Applying § 64.1601(e) To Short Codes Produces An Absurd, All-Or-Nothing Result The FCC Could Not Have Intended.***

Plaintiff's Opposition incidentally makes UOPX's case. Plaintiff states that "[w]hat Plaintiff contends is that a company electing to use a short code for telemarketing must comply with the caller ID requirement . . . most obviously by using a[n] SS7-routable ten-digit number." Opp. at 10. But using a short code and using a ten-digit SS7-routable number are **mutually exclusive** by definition—a short code cannot simultaneously be a compliant CPN or ANI while remaining a short code because short codes do not have 10 digits. *See Moskowitz v. Am. Sav. Bank, F.S.B.*, No. CV 17-00299 HG-RT, 2020 WL 61576, at *3 (D.

Haw. Jan. 6, 2020), *aff'd*, 37 F.4th 538 (9th Cir. 2022) ("short codes" are **5- or 6-digit numbers** "that can only be used to send and receive text messages.") (emphasis added). Plaintiff's own formulation therefore concedes that, under his own reading, there is no such thing as a compliant short-code telemarketing text: the only way to comply is to stop using a short code altogether. That is precisely the categorical prohibition UOPX deems nonsensical. Such a broad interpretation is inconsistent with the FCC's regulatory scheme, which expressly contemplates short codes as a lawful means of sending text messages, including for telemarketing purposes, subject to registration with the Common Short Code Administration. *See* Truth in Caller ID Rules, 84 Fed. Reg. 45669, 45671 (Aug. 30, 2019) (including short codes under the definition of text messages). Plaintiff offers no textual or regulatory basis to conclude that the FCC silently banned an entire, government-administered messaging channel through a caller ID regulation adopted decades earlier which does not even mention short codes.

Plaintiff's reliance on *Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571 (E.D. Pa. 2025), does not save him either. *Newell* is an out-of-circuit decision that did not address, let alone resolve, whether § 64.1601(e) applies to short codes at all. In *Newell*, the defendant sent unsolicited text messages to the plaintiff using a **10-digit number**, not a short code. 2:25-cv-01419-GAM, FAC ¶ 26. The question in *Newell* was whether a text message sent with a 10-digit number that transmitted a website URL could satisfy the caller identification requirement under § 64.1601(e). *Newell*, 791 F. Supp. 3d at 584–85. Accordingly, *Newell* addressed whether § 64.1601(e) applies to regular text messages sent with 10-digit numbers, not whether § 64.1601(e) applies to short code text messages. In contrast, here, the issue is whether the CPNs or ANIs requirement under § 64.1601(e) applies to short codes, which would render all short codes unlawful when used for telemarketing. Because *Newell* never even discussed short codes, Plaintiff's reliance on that case is misplaced.

Accordingly, Plaintiff's second cause of action should be dismissed for this additional reason.

### C. Plaintiff Lacks Article III Standing To Pursue The Second Cause of Action, And The Voice Calls Are Irrelevant To The Standing Inquiry.

Plaintiff's Opposition conflates two distinct claims and two distinct sets of communications to manufacture an injury that his own Complaint forecloses. UOPX's standing challenge is directed solely at the Second Cause of Action, in which Plaintiff asserts he was harmed by receipt of two short code text messages sent on February 11 and 12, 2024. Compl. at "Second Cause of Action"; Mot. at 9–11. Plaintiff responds, however, by pointing to the two voice calls placed on February 17 and 19, communications that are irrelevant to the Second Cause of Action, as the source of his injury. Opp. at 9–10. The Second Cause of Action must be assessed based on the text messages themselves, not on events that occurred days later.

Perhaps Plaintiff attempts to muddy the water because he knows when judged solely on the two text messages, he fails to plead a concrete injury traceable to the absence of a compliant CPN or ANI. Plaintiff never alleges that he was confused about who was texting him. To the contrary, he received communications from UOPX right after he requested to be contacted by UOPX. The messages referenced "becoming a Phoenix," his "application," and class registration, and the Complaint does not allege Plaintiff experienced even a moment's doubt about the sender's identity. Compl. ¶ 27. Nor does Plaintiff allege that he was unable to stop the texts. He replied "Stop" and UOPX immediately confirmed he had been unsubscribed. *Id.* ¶¶ 25–26. Furthermore, Plaintiff does not allege that UOPX kept texting him after he replied "Stop."

Plaintiff's reliance on the out-of-circuit case *Novia v. Mobiz, Inc.*, 2026 WL 752181 (D. Mass. Mar. 17, 2026) is misplaced. The injuries the *Novia* court found adequate for Article III standing—diminished trust in the identity of the sender and difficulty determining whom to ask to stop—are simply not alleged here. *Id.* at *2. Because Plaintiff identified UOPX without issue and successfully opted out, Plaintiff lacks concrete injury-in-fact required for Article III standing to pursue the Second Cause of Action. Accordingly, Plaintiff's Second Cause of Action should be dismissed on this independent ground.

### D. Plaintiff's First And Third Causes Of Action Should Also Be Dismissed Because The Voice Calls Were Placed Within A Reasonable Period Of Time After Plaintiff Texted "Stop."

Plaintiff argues that what constitutes the reasonable period of time under the safe harbor recognized by this Court in *Crews* is a case-by-case, fact-intensive inquiry not suitable for motion to dismiss. Opp. at 13–16. Not so. The facts pleaded here allow the Court to find, as a matter of law, that UOPX honored and implemented Plaintiff's opt out request within a reasonable period of time and therefore did not violate the TCPA.[1]

Plaintiff cites numerous out-of-circuit, non-binding authorities, but the Court need look no further than its own holding in *Crews v. Sun Solutions AZ LLC*. In *Crews*, the plaintiff Crews initially expressed interest in being contacted by the defendant. 2024 WL 2923709, *1 (D. Ariz. June 10, 2024). Crews later changed his mind and submitted a DNC request. *Id.* The defendant continued to contact Crews and sent him two texts eleven days after the DNC request. *Id.* at *6. When evaluating "the merits of the claim and the sufficiency of the complaint,"[2] this Court held that these text messages were "not actionable under the TCPA" because they were "sent within a reasonable time … after [Crews] made his do-not-call request."[3] *Id.*

Similarly, Plaintiff initially asked to be contacted by requesting information from UOPX and submitting his application. Compl. ¶¶ 24, 27. Plaintiff then changed his mind

---

[1] UOPX does not concede that Plaintiff revoked his consent to receiving voice calls by texting "Stop" on February 12, 2024, but will assume so for the sake of argument limited to Motion to Dismiss briefing.

[2] Even though *Crews* is a default judgment case, the specific inquiry is analogous to a motion-to-dismiss.

[3] Plaintiff took issue with the fact that UOPX immediately honored and implemented his DNC request for text messages, but two calls continued. Opp. at 15–16. But texts and calls are different. *See DeMesa v. Treasure Island, LLC*, 2022 WL 1813858, *3 (D. Nev. June 1, 2022) (observing that the Ninth Circuit has continued to distinguish between texts messages and voice calls even though texts fall within the definition of calls under the TCPA). It is unfair to deny UOPX a reasonable period of time to honor and implement Plaintiff's DNC request with regards to voice calls just because UOPX diligently honored the DNC request for texts immediately.

about how to be contacted and submitted a DNC request by texting "Stop." *Id.* at 25. UOPX placed two calls after Plaintiff made the DNC request within seven days of the request. Applying this Court's reasoning in *Crews*, these calls are "not actionable under the TCPA" because they were placed "within a reasonable time … after Plaintiff made his do-not-call request." *Crews*, 2024 WL 2923709, at *6; *see also* 47 CFR § 64.1200(d)(3) (allowing "a reasonable time" from the date of the DNC request to honor and implement the request); § 64.1200(a)(10) (allowing "a reasonable time" to honor "requests to revoke prior express consent").

Furthermore, Plaintiff's reliance on *Gill* is misplaced as *Gill* is easily distinguishable. There, the court denied the defendant's motion to dismiss because the defendant has a bizarre protocol that explicitly "requires a phone call immediately after a person asks to be placed on a do-not-call list." 2022 WL 1540016, *4 (E.D. Wis. May 16, 2022). Plaintiff does not and cannot allege anything even remotely similar in his Complaint.

Finally, Plaintiff's concern about potential abuse of the safe harbor lacks support given the pleaded facts here. UOPX placed exactly two calls, merely five and seven days after Plaintiff's "Stop" text, and then stopped contacting Plaintiff entirely. Compl. ¶¶ 25, 37. Based on this narrow set of facts, no reasonable person would believe that UOPX was attempting to abuse the safe harbor period. UOPX took a reasonable period of time to honor Plaintiff's DNC request in compliance with the TCPA.

Therefore, Plaintiff's First and Third Causes of Action should be dismissed on this independent ground.

## III. CONCLUSION.

Because Plaintiff initiated a transaction with UOPX by requesting information and submitting an application, the challenged communications are not actionable under the TCPA because they do not constitute telemarketing. For that reason and other reasons stated above, the Court should dismiss Plaintiff's Complaint in its entirety with prejudice and award UOPX such other and further relief as the Court deems just and proper.

Dated: September 8, 2026

HUSCH BLACKWELL LLP

By: */s/ Matthew Knepper*

Matthew Knepper (pro hac vice)
Sarah Zimmerman (pro hac vice)
Brendan Melander
*Attorneys for Defendant Phoenix Education Partners, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of September, 2026, I electronically filed with the Clerk of the Court using the ECF system.

The ECF system will send notification of such filing to:

Andrew Perrong
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
a@perronglaw.com
*Attorney for Plaintiff Asher Bronstin*

*/s/ Claudina Mazon*
Claudina Mazon